IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 13-CR-179 |
| ROBERT MANSFIELD | : | |

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

**I.    Introduction**

ROBERT MANSFIELD is a significant drug trafficker from Baltimore with two prior felony drug trafficking convictions. MANSFIELD was the main supplier of the Outlaws Motorcycle Gang in Philadelphia. MANSFIELD told the Outlaws that he could obtain unlimited quantities of pure methamphetamine directly from a Mexican drug cartel. In January 2013, MANSFIELD sold approximately 2 pounds of nearly pure methamphetamine to the President of the Outlaws Motorcycle Gang. Fortunately, an FBI confidential human source (CHS) had infiltrated the Outlaws and the FBI seized the drugs. After the drugs were seized, MANSFIELD and others working on MANSFIELD's behalf left the CHS a series of chilling voicemail messages which threatened the life of the CHS and his family. At the time of these offenses, MANSFIELD was on state parole in Maryland and he had failed to report to his parole officer for many months. If convicted of these offenses, MANSFIELD faces a mandatory life sentence on account of his two prior drug trafficking convictions and the seriousness of the present charges.

Because no condition or combination of conditions will reasonably the appearance of the defendant at trial or assure the safety of the community, the government moves pursuant to 18 U.S.C. § 3142 for pretrial detention of the defendant.

## II. Discussion

### A. Evidence

In January 2013, the FBI was using a confidential human source ("CHS") to infiltrate the Outlaws Motorcycle Gang in Philadelphia. The Outlaws Chapter President Ronald Sells told the CHS that he could obtain unlimited suppliers of methamphetamine from ROBERT MANSFIELD and his drug dealing partner, JOSEPH MALCOLM. Sells had previously obtained an ounce of methamphetamine for MALCOLM and MANSFIELD on two prior occasions and had established a drug dealing rapport with them. Therefore, on this occasion, MANSFIELD and MALCOLM "fronted" approximately two pounds of methamphetamine worth about $48,000 to Sells and the CHS. Sells and the CHS then transported the methamphetamine to Philadelphia where it was seized by the FBI.

The FBI sent the drugs to the DEA laboratory for testing which confirmed that the substance was, in fact, methamphetamine. The methamphetamine was divided into two different parts. One part weighed 738.3 grams and was 100% pure. The second part weighed 83.6 grams and was 95.4% pure.

On or about January 22, 2013, MALCOLM and MANSFIELD met with Sells wanting payment for the drugs. Sells told MALCOLM and MANSFIELD that the CHS had not paid him yet. MANSFIELD threatened Sells that if he did not pay for the drugs that Sells and his family would be killed. Sells reached out to some mutual friends, obtained the CHS's purported real name, and provided the CHS's personal information to MALCOLM and MANSFIELD. MALCOLM and MANSFIELD used this information to find the CHS's former address.

On January 23, 2013, MALCOLM, MANSFIELD, and Sells met again and discussed the money which the CHS owed them for the 2 pounds of methamphetamine. MANSFIELD mentioned he sold large quantities of drugs and had recently received $100,000 worth of drugs from a Mexican drug cartel. Based upon what the CHS had reported to Sells, the group believed that the CHS had collected the money in New York. MANSFIELD and Sells drove to Philadelphia to meet with the CHS and collect the money. When the CHS failed to show with the money, MANSFIELD and MALCOLM took the CHS's motorcycles which were parked at the Outlaws clubhouse as collateral on their extortion attempt.

During the week of January 28, Sells became increasingly concerned about the money he owed to MALCOLM and MANSFIELD and the threats they were making to him and his family. Sells, MANSFIELD, and others drove to the CHS's home in New Jersey looking for him on several occasions that week. MALCOLM did not accompany them because he was on electronic monitoring and wearing an ankle bracelet. Moreover, Sells sold his vehicle and his motorcycle and made a payment of $12,000 to MALCOLM and MANSFIELD towards the debt for the methamphetamine.

On January 29, 2013, at 6:28 a.m., MANSFIELD left the following message for the CHS on his voicemail:

> [Left name of CHS.] Believe you have something that belongs to me. I'd like to get it back. I got your motorcycles, I got your trailer. I got your girlfriend's address, I got your ex-girlfriend's address, where your kid goes to school and I'm, got your trailer too, I'm, I got, I got the tag to the Florida address. I'm gonna have that today, have to pay your son a visit. I'm gonna take the chopper and the truck. You have to get a hold of me and give me what is mine.

On February 1, 2013, around 1:22 pm, MANSFIELD called the CHS's cell number and left the following voicemail message:

> "Hello . . . hello . . . hello. Now I don't got time for games, man. You want your bikes back, you need to come up with my money. Can't get ahold of [Sells]. Guess I have to start taking people apart, that's all. See you around."

Later that day, around 3:50 pm, MALCOLM called the CHS and left the following voicemail message:

> "You can believe one thing. You can fuck with me all you want to but motherfucker, trust me, your whole family is in danger. Fuck you."

Around 8:04 pm that evening, MANSFIELD called the CHS and left the following voicemail message:

> "23 [Street Name]. 4 [Street Name]. I'll have the address for your son's house in Florida this week. I got the tag numbers, I got your bike, I got your trailer. I want my money. Your whole family is going to be in danger if not. You need to pick up the fucking phone. You're supposed to meet [Sells] today, now he's not answering the phone either. As far as I'm concerned, both you all in the same boat."

During this voicemail message, MANSFIELD noted the purported address of the CHS's ex-wife and his child.

### B.     Maximum Penalties

MANSFIELD is charged in a three count indictment with: (1) conspiracy to distribute 500 grams or more of methamphetamine, (2) distribution of 500 grams or more of methamphetamine, and (3) conspiracy to collect an extension of credit by extortionate means. Since MANSFIELD has two felony prior drug trafficking convictions, he faces a <u>mandatory life</u> sentence if convicted on either Count One or Count Two.

### C. Criminal Record

MANSFIELD has a lengthy criminal record for mostly drug related offenses. He has several arrests for possession of controlled subtances. In March 2006, MANSFIELD was convicted of possession with the intent to distribute a controlled substance and given an 18 months suspended sentence. On April 6, 2009, MANSFIELD was sentenced to 3 years in jail for possession with the intent to distribute a controlled substance. On November 13, 2009, MANSFIELD was sentenced to 5 years in prison for possession of a firearm by a convicted felon which appears to have been run concurrently with his prior sentence. He was also charged but not convicted of possession of a rifle/shotgun and possession of bulletproof armor. He was released from prison on May 31, 2012. He remains on parole until February 16, 2014.

Not only did MANSFIELD commit these offense while on state parole, but MANSFIELD failed to report to his parole officer for more than 6 months. At the time of his indictment, his parole officer did not have a current address or phone number for MANSFIELD.

### D. Community Ties

MANSFIELD has few, if any communities ties, and no legitimate ties to the Eastern District of Pennsylvania. He apparently lives in Baltimore, although he lives almost entirely off the public record. He does not own a home. He does not have any vehicles titled in his name.

### III. CONCLUSION

MANSFIELD is a two-time convicted drug trafficker. He was distributing large quantities of drugs while on parole supervision. MANSFIELD dealt not only with the Outlaws Motorcycle Gang but also with a Mexican drug cartel. MANSFIELD threatened the life of an FBI CHS and his family. He has few community ties. MANSFIELD is both an extreme danger to the community and a serious flight risk. He has demonstrated that any type of non-custodial setting is insufficient to protect the public. For these reasons, the government submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_____/s/_____
ROBERT J. LIVERMORE
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 13-CR-179 |
| ROBERT MANSFIELD | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this      day of May 2013, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated 21 U.S.C. §§ 841 and 846, and 18 U.S.C. § 894(a)(1).

2. The evidence in this case is strong. The FBI seized approximately two pounds of methamphetamine which the defendant distributed and recorded a series of phone calls

in which the defendant threatened and FBI confidential informant and his family for failing to pay a drug debt.

      3.      As a result of the defendant's two prior felony drug trafficking convictions, the defendant faces a mandatory life sentence if convicted of either drug trafficking count.

      4.      The defendant has a lengthy criminal record which includes two prior drug trafficking convictions.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE JACOB P. HART
United States Magistrate Judge

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order was served on the following defense counsel:

Sharif N. Abaza
Counsel to Robert Mansfield

/s/
ROBERT J. LIVERMORE
Assistant United States Attorney